Judge Grimke
delivered the opinion of the court:
This case presents some questions of very great importance, and yet, I believe, most of them have been already settled by this court. As, for instance, in 5 Ohio, 488, it has been decided that bridges, turnpikes, and highways, are public works, and in 4 Ohio, 253, and 5 Ohio, 118, that where private property is appropriated to public use, it is not necessary the damages should be assessed before the appropriation, and that the mode of assessment by commissioners is constitutional. It is very true that precedents are not of such binding authority that they may not be overruled, but they are naturally of very great weight. It is as necessary that there should bo a law to restrain the court, as that there should be *rules to restrain the conduct of individuals, and precedents constitute that law. The great principle on which society is constructed in this country is, that the welfare of the community is superior to that of private individuals, which is just the reverse of what it is in most other countries, where the welfare of the community is considered as subordinate to that of private individuals. Hence, the spirit of public improvement has been carried further in the same period of time, in this country, than in any other. Highways, turnpikes, and canals are constructed, because the public have an interest in them, and it is of more importance that the public should not be deprived of the right to have them constructed, than it is that private individuals should nqt be deprived of any of their privileges. And the security to the individual members of society is almost perfect where there isa genuine exercise of the right. But what shall be the test, whether a work is to bo deemed a public improvement? It can not be the fact of its having originated with the legislature, or of its being conducted exclusively by agents appointed by them; for roads constructed under the authority of the county commissioners, are as much public works as state roads which have been established by the legislature. The inquiry, then, must necessarily be what are the objects to be accomplished; not who are the instruments for attaining them. A canal, traversing the whole length of the state, may be constructed by an incorporated company, while a road of twenty miles may be laid out under the authority of the legislature. Would the community have less interest in the former than in the latter? If they would have only as great an interest, then the question is answered, and the difficulty *405 is solved ; for the character of a work must depend upon its nature and not its nature upon the name which is given to it. It is supposed that a good deal of difficulty and uncertainty will be the consequence of this construction. But he who has to deal with the affairs of men, has necessarily some difficulty to encounter. Human interests are not like mathematical abstractions. If they were, there would be no opportunity for the display of prudence, judgment ■and discretion, nor for the exercise of distributive justice in its various forms. There does not, however, appear to be much room for uncertainty in this case. Here is a canal eighty miles in length, connecting the Ohio with the Pennsylvania canal. It is, in reality, a branch of the former. Suppose *the original design had been to connect our great canal with the Pennsylvania canal, and that afterward the canal from the lake had been cut s,o as to intersect it, then the Pennsylvania and Ohio canal would have been called the principal work, and the other only an appendage to it. But the time when these two improvements were undertaken, can not make any difference in the character of public utility which belongs to them. So that if it is the nature of an undertaking which is alone entitled to give a name to it, there is neither difficulty nor uncertainty in the application of the rule. It is a consideration of great importance, too, that this canal is declared to be a public highway. It is, indeed, one which is decisive of the matter.
The constitution declares that private property may be appropriated to the public use, provided a compensation is made to the owner. This right to take private property is called, by writers on public law, the eminent domain of a stato, and there is a great difference of opinion among them upon the question, whether the state is bound to make compensation. The clause in our constitution was inserted for the purpose of settling these doubts, and not as has been generally supposed, for the purpose of rendering the compensation a condition precedent. It is intended, as a public declaration in answer to the opinions of some European writers on the subject, that the owner is entitled to compensation, and was not intended to convey the idea that he must be paid beforehand. InMcGowen v. Starke, 1 Nott & McCord, 387, the Supreme Court of South Carolina have decided that the state is not bound to make compensation in such a case, and this is in consequence of their constitution containing no provision on the subject. It may *406 be asked, what security is there that compensation will be made,, unless it is made .before the property is taken.. Precisely that degree of security which exists in a multitude of other instances of infinitely greater moment, in which the citizen reposes a volun tary and unlimited confidence in the good faith of the state. Not’ to mention the case of the public creditors, who are never sure-that they will be reimbursed until payment is actually made; the-people are dependent from year to year on the legislature for the-enactment of laws which are intended .to answer their most pressing wants. And if any selfishness is to be suspected on the occasion, there is less reason to apprehend its existence in *this case, because the state does not make compensation out of its own funds in the first instance, but compels it to be made by the company. It is of infinite importance that the citizens of' the state should not consider themselves as merely isolated individuals, having no bond of connection with the common weal.. • They should consider themselves as united together for the advancement of the interest and happiness of the whole community,, and not be disposed to repine at every little inconvenience which» their patriotism may occasion them.
The charter of the Pennsylvania and Ohio canal contains very ample provision for the assessment of damages to the plaintiff. Section 9 declares that “ whenever the owner of property and the-company can not agree as to the amount and can not also agree on some person or persons to appraise the same, that then the legislature shall appoint commissioners for that purpose.” So that the act not only authorizes the appointment of a tribunal, in the selection of which the party has an immediate participation, but on failing to make the appointment, the legislature bind themselves to make another. But, in this event, it is the plaintiff himself who must first move in the business. They have given him an election to have the dispute settled by the simple and quiet arbitrament of his own neighbors. And if he does not accept this, he should make application for the appointment of commissioners.. How then can he complain that an act has not been done, in the performance of which he is to be chiefly instrumental?
It is immaterial in the shape which these pleadings have now assumed ; but I understand that commissioners have actually been appointed. But it is said that the right of trial by jury is violated by the appointment of commissioners. This is an objection which *407 I have heard repeated ever since my earliest recollection of such matters; and yet it has always been made with that degree of hesitation which denotes that the objector is not altogether sure of "the ground on which he stands. It has been constantly made in the progress of every public improvement which has been executed in the United States ; and yet every one seemed to feel that Although it was striking and plausible, yet that it could not possibly be maintained. The constitution declares that the right of ■trial by jury shall be inviolate ; and the only way in which we can ascertain the true meaning of this clause, is by ^making inquiry whether, before the constitution was framed, jury trial was known in such cases in the territory of Ohio. And one of the first •acts, which I recollect, is that of December 13, 1799, by which five commissioners are authorized to take the land of private individuals, where the public convenience requires that a road should be conducted over it, and declaring that any three of the five may agree in the assessment of damages to the owners. This act is of great importance; for here were a people living under a republican form of government with almost every form of civil polity, the same as at present, who afterward frame a constitution for themselves, and who, in effect, declare that jury trial shall be held inviolate as it was before; and yet the intervention of a jury, in such cases, was not only unknown, but, by necessary implication, was absolutely prohibited. If it should be supposed that the term of our territorial government was too short to settle the true import of the term jury trial, the constitution and laws of the other states may afford us some light. Rut in examining these, it will be found that although the constitutional provision is generally the same as ours, yet that there is the greatest variety in tho procedure which the laws authorize. In some of them, throe commissioners are appointed; in some five, and in others a greater numbei*. In some the appointment is made by the legislature ; in others by the Supreme Court, and in others again by a county court. And this has been the case, notwithstanding some of these states have changed their constitutions in the intermediate time, and have guarded the provision by no additional or explanatory declaration. Perhaps there is no constitutional question which has ever been ■ discussed in this country, which has been so completely settled by ^contemporaneous construction and universal acquiescence. On ■what principle is it that juries are dispensed with in the greater *408 number of our courts, in courts of equity, courts of admiralty, courts martial, and courts of justices of the peace. Magna charta declares that no man shall be deprived of life, liberty, or property, but by the judgment of his peers, or the law of the land. Mr. Sullivan (secs. 39, 40) remarks that as juries were unknown in those courts before the great charter, their disuse constituted a part of the law of the land; and, therefore, although that charter was the first great instrument which solemnly guaranteed jury trial to Englishmen, yet it *has never been supposed that "that institution constituted a part of thp machinery of those courts. And I believe it would be equally difficult in that country to find an instance of the intervention of a jury, in the proper acceptation .of the term, in a case like the present. In the Governor and Company, etc. v. Meredith, 4 D. & E. 794, which was an action of trespass like the present, the defendants had acted under an act of parliament, authorizing the straightening the streets of a town; the act also appointed commissioners to assess the damage done to individual proprietors. The court were unanimous that the action would not lie. Buller remarked that where the public welfare required it, private property might be taken without making compensation, and that, therefore, on general principles, the action would not lie, but that, at any rate, as commissioners had been provided to estimate and pay the amount of compensation, that that Alone was a sufficient answer to the action.
The provision in magna charta, which I have referred to, is transcribed into the ordinance, omitting only the word life. And if the last six articles of this instrument are of perpetual obligation, then we have in Ohio the same law and the same course of proceeding as in England, and very nearly the same as in the other states of the Union. If the law were otherwise, no courts would have time sufficient to try the infinite multitude of actions which would arise. It is sometimes said that the utility of any political arrangement is no reason for committing an impropriety; but public utility itself becomes sometimes a great rule of justice. They who make the constitutional objection in this ease,- do not recollect that if twelve men were selected, they could not be used in the way in which juries ordinarily are. Having no relation to any court of justice in the state, there would bo no rule for appointing them in the way that common law juries are chosen, nor any reason for composing them of twelve rather than of any other *409 Dumber, Dor for requiring unanimity in their decisions. And. above all, there could be no presiding law tribunal, the conjunction with which is the peculiar and valuable feature of jury trial; so that after all, persons appointed for the purpose of assessing-damages would be nothing more than commissioners, as they now are, whatever name we might be pleased to give them. He who-will take the trouble to examine our laws, as well before as since-the formation of *our constitution, will find that they are-uniformly regarded as an appendage to the courts only. No juries are ever mentioned but such as are auxiliary to the administration of justice in some court; and, on the whole, the conclusion to which we are justified in arriving is, that there is nothing repugnant to the constitution in the law under which, the defendant defends himself. Objections of this kind should ever bo listened to with attention and earnestness. For, although, to decide upon the constitutionality of a law is a duty which no judge should, court, yet it is also one from which no judge should shrink.