Marshall, C. J.
 

 This case was originally tried as a bastardy proceeding in the court of common pleas of Franklin county, Ohio, being a proceeding
 
 *394
 
 under Section 12123, General Code. An amendment of that section passed April 5, 1923 (110 Ohio Laws, 299), materially changed its provisions. The statute now reads, in part, as follows: “If, in person or by counsel, the accused confesses in court that the accusation is true or, if the jury find him guilty, he shall be adjudged the reputed father of the bastard child
 
 and the court shall thereupon adjudge that he pay to the complaincmt such sum as
 
 the|
 
 court may find to be necessary for her support, maintenance and necessary expenses, caused by pregnancy and childbirth together with costs of prosecution.”
 

 Prior to the amendment that portion in italics read as follows: “and stand charged with its maintenance in such sum as the court orders, with payment of costs of prosecution. ’ ’
 

 The cause came before this court upon motion to certify the record on the ground of public interest and great general interest, but that motion was overruled. A petition in error was also filed in this court as of right, claiming that the cause involves a question arising under the Constitution of the State of Ohio. A motion to dismiss the petition in error was •filed, claiming that it involved no debatable constitutional question. Inasmuch as the motion to certify was overruled, there is no occasion for discussion of any question except the one involving the claim of unconstitutionality of Section 12123, General Code.
 

 It is conceded that before its amendment that statute was held to be constitutional, and the claim of unconstitutionality is now based upon the changes made by the amendment. It is claimed that the statute no longer provides for the enforcement of a
 
 *395
 
 moral duty arising from a criminal offense, but that it is in its present form a provision for recovery of money due to tbe complainant from tbe defendant, and that it therefore violates Section 5, Article I, of the Ohio Constitution, which guarantees the right of trial by jury, Section 6, Article I, of the Ohio Constitution, which forbids involuntary servitude except as a punishment for crime, Section 15, Article I, of the Ohio Constitution, which prohibits imprisonment for debt, and the Fourteenth Federal Amendment, which guarantees due process of law.
 

 Upon the question of defendant’s guilt the issue was submitted to a jury and no error is assigned upon that portion of the record. After the jury had adjudged the defendant to be the reputed father, the court proceeded without a jury to determine the sum necessary for the complainant’s “support, maintenance and necessary expenses, caused by pregnancy and childbirth,” and for this purpose further testimony was taken. Upon consideration of this evidence the court made an order that the defendant pay the sum of $878 and the costs of the proceeding, and further ordered that the defendant give security to the acceptance of the court for the performance of its order, in the sum of $1,500, and that, in default of such payment or security, he be committed to the jail of Franklin county, Ohio, there to remain, except as provided in Section 12124, General Code, until he comply with the order of the court. We see no merit in the claim that defendant was denied due process, because it appears that there was a regular hearing, after notice, and that the trial was conducted in an orderly manner. It further appears that the court had undoubted juris
 
 *396
 
 diction over the parties as -well as the subject-matter of the action. The limitations of due process of law have never been defined, but many courts have declared that due process means the general law of the land, which hears- before it condemns, proceeds on inquiry, and renders judgment only after trial. Measured by this standard, this record does not disclose a denial of due process.
 

 The failure to submit the inquiry to the determination of a jury cannot be held to amount to a denial of due process, and we need indulge no further discussion of that subject than to point to the for mer decision of this court in the case of
 
 Stephenson
 
 v.
 
 State,
 
 119 Ohio St., 349, 164 N. E., 359. Generally speaking, the guaranty of due process of law was designed as security against arbitrary action. In this case, however, there is no claim that the court proceeded at any time or in any manner contrary to the plain provisions of the statute. The principal complaint is that the statute itself, in making no provision for the right of trial by jury, and in providing for an order of imprisonment in default of compliance with the order to make payment or give security, amounted to a denial of due process.
 

 Section 5 of the Ohio Bill of Rights provides that “the right of trial by jury shall be inviolate,” etc. It was not, however, the intention of the framers of that clause of the Bill of Rights to guarantee the right of trial by jury in all controversies. That guaranty only preserves the right of trial by jury in cases where under the principles of the common law it existed previously to the adoption of the Constitution. The right of trial by jury has uniformly been recognized and enforced in this state
 
 *397
 
 in actions for money, where the claim is an ordinary debt, bnt it is equally well recognized that many special proceedings for the enforcement of a moral duty, where the payment of money is the ultimate relief granted, does not entitle the parties to a jury trial. Nearly all alimony proceedings are for the recovery of money, and an order for payment of money either in bulle or in installments is usually granted. No one would contend that a jury trial was guaranteed in that character of cases. In
 
 Brown, Exr.,
 
 v.
 
 Reed,
 
 56 Ohio St., 264, 46 N. E., 982, it was held that an executor who exercises bad faith in the sale of lands under a testamentary power to sell can be charged with the difference between an inadequate sale price and the true value of the lands, and it was stated by Judge Shauck in the opinion that the guaranty of the right of trial by jury does not extend to such a proceeding.
 

 By the amendment of Section 12123, General Code, the character of the section has been materially changed. Formerly the statute was intended as a remedy to compel the support and maintenance of an illegitimate child, and the benefits to accrue to the mother of the child were incidental. By virtue of the amendment, provision is only made for the support, maintenance, and necessary expenses of the mother. It is claimed therefore that it has lost its character as a means of enforcement of a moral duty and has become a civil remedy for the recovery of a debt. If this is the correct interpretation of the statute as amended, then defendant is entitled, not only to a jury trial, but is exempt from imprisonment as a means of enforcing payment. It becomes pertinent to inquire therefore the
 
 *398
 
 nature of a debt which entitles a debtor to jury trial and which exempts him from imprisonment. In
 
 Second Nat. Bank of Sandusky
 
 v.
 
 Becker,
 
 62 Ohio St., 289, 56 N. E., 1025, 51 L. R. A., 860, it was held by this court that Section 15 of the Bill of Rights forbids imprisonment for money obligations arising from contract, express or implied, and judgments rendered thereon. In
 
 State, ex rel. Cook,
 
 v.
 
 Cook,
 
 66 Ohio St., 566, 64 N. E., 567, 58 L. R. A., 625, it was held that final decree for alimony is not a debt within the meaning of Section 15 of the Bill of Rights. In that case a decree had been rendered, and upon failure of defendant to comply with the decree contempt proceedings were instituted, and defendant was adjudged guilty of contempt and ordered to be imprisoned until he should comply with the order of the court. The question whether alimony is a debt, and whether an order for its payment can be enforced by imprisonment for contempt, was discussed at length on page 572 of the opinion in 66 Ohio St., 566, 64 N. E., 568, and the conclusion was reached that alimony is not a debt within the meaning of the Constitution, but rather that it arises from a duty which the husband owes as well to the public as to the wife, and that it does not arise out of any specific contract. It further declared that the proceeding in which the adjudication was had is not a civil action. The case of
 
 Hawes, Commr. of Insolvents,
 
 v.
 
 Cooksey,
 
 13 Ohio, 242, is more directly in point, because the issue was whether or not an order for the maintenance of an illegitimate child is subject to a discharge in bankruptcy. It was held that a bastardy proceeding is quasi-criminal in its nature, that it is the enforcement of a moral
 
 *399
 
 duty arising from a criminal offense, and that the order for maintenance was not a debt within the meaning of the bankruptcy act. In
 
 Perkins
 
 v.
 
 Mobley,
 
 4 Ohio St., 668, Judge Ranney, at page 673 of the opinion, refers to the character of a bastardy proceeding in the state of Ohio, and declares that it neither punishes a crime nor gives redress for a civil injury, but is simply a statutory remedy to enforce a high moral duty. In
 
 Musser
 
 v.
 
 Stewart,
 
 21 Ohio St., 353, the constitutionality of the statute as it existed before amendment was challenged as being in conflict with Section 15 of the Bill of Rights, and its constitutionality was upheld. In the opinion it was declared that it was not a suit to recover a sum of money owed by the defendant to the complaining party; that it was not founded on contract express or implied, but that it originates in the wrongful act of the defendant, against the consequences of which the statute is designed to protect the public. The courts of many other states where similar provisions are found in the bills of rights adopt the same view.
 

 The constitutionality of the statute before its amendment was no longer debatable. The only question remaining to be considered is whether the provision which has been made by the amendment for the benefit of the mother is likewise based upon a moral duty, and whether the rights of the public are also involved. It is a matter of common knowledge that pregnancy and childbirth result in illness and disability and prevent the mother from pursuing her usual vocations, and that she is also involved in various expenses. So far as the rights of the public are concerned, there is little danger that
 
 *400
 
 an illegitimate child will become a public charge unless the mother is in destitute circumstances. There is therefore the same risk that the mother will become a public charge as in the case of the child. We therefore have reached the conclusion that the statute which makes provision for the support and maintenance of the mother, and which permits the court to determine the amount necessary for her support and maintenance, and which authorizes the court to commit the defendant to the county jail in default of compliance with the order, does not transgress the several provisions of the Bill of Rights referred to.
 

 The judgment of the Court of Appeals will be affirmed.
 

 Judgment affirmed.
 

 Kinkade, Robinson, Jones, Matthias, Day and Allen, J J., concur.