Hart, J.
The accused, appellant herein, claims that since the statutory definition of a civil action is limited by Sections 11237 and 11238, General Code, to proceedings in a court-of justice involving process, pleadings, and a judgment or decree for redress or the enforcement of a legal right (Missionary Society of M. E. Church v. Ely, 56 Ohio St., 405, 407, 47 N. E., 537), a bastardy proceeding may not qualify as a civil action in which a verdict may be rendered upon the concurrence of only three-fourths or more of the-members of the jury. The accused bases this contention on a construction of a constitutional amendment and a statutory enactment following such amendment.
By amendment of the Ohio Constitution, effective October 8,1912, Section 5, Article I thereof, provides r
“The right of trial by jury shall be inviolate, except that in civil cases laws may be passed to authorize the rendering of a verdict by the concurrence of not less than three-fourths of the jury.” (Italics supplied.)
This court subsequently. held that the provisions for a verdict by three-fourths of the members of a jury in a civil case, carried into the Constitution by amendment of Section 5, Article I, was not self-executing and required legislation to give it effect,. *63 Elder v. Shoffstall (1914), 90 Ohio St, 265, 107 N. E., 539. Consequently, the General Assembly in 1913 (103 Ohio Laws, 11) enacted Section 11455, a part of the Civil Code, which was afterwards amended and is now Section 11420-9, General Code, effective August 3, 1931, in form as follows:
“In all civil actions a jury shall render a verdict upon the concurrence of three-fourths or more of their number.” (Italics supplied.)
It is pertinent to consider the purpose and nature of the instant proceeding. It has been held that filiation statutes are generally considered to be in the nature of police regulations. Their purpose is “to secure the support and education of the. child and to protect society by preventing such child from becoming a public charge,” and “even though the act of the putative father is regarded as an offense against the peace and good order of society, the penalty which the law imposes for his transgression is to enforce upon him the duty of making provision for the maintenance of his illegitimate offspring, rather than to punish him for misconduct.” 7 American Jurisprudence, 680, Section 80; State, ex rel. Patterson, v. Pickering, 29 S. D., 207, 136 N. W., 105, 40 L. R. A. (N. S.), 144; State v. Brunette, 28 N. D., 539, 150 N. W., 271, Ann. Cas, 1916E, 340; annotations, 40 L. R. A. (N. S.), 145, 146; 11 Ann. Cas., 317.
As above observed, the constitutional amendment •authorized the General Assembly to provide for the •rendering of a verdict in “civil cases” by the concurrence of not less than three-fourths of the jury; -and the General Assembly, in turn, pursuant to such •authority, provided by statute that in all “civil actions” a jury may render a verdict by the concurrence •of three-fourths or more of its members. This court in construing these legislative provisions inferentially held that the term, “civil cases,” used in Section *64 5, Article I of the Constitution, and the term,'“civil actions,” used in Section 11420-9, General Code, are the equivalents of each other and are used interchangeably. Miami Conservancy District v. Mitman, 100 Ohio St., 315, 125 N. E., 875. The problem before us is whether a bastardy proceeding is a civil case or a civil action permitting a verdict therein by the concurrence of three-fourths or more of the members of a jury.
The procedure in a civil action contemplates the filing of a petition upon which a summons is issued and service made upon the defendant; pleadings filed by the parties to develop the controverted issues; a hearing before a court or jury; a preponderance of the evidence as sufficient to support the cause of action; a finding by the court or a verdict rendered by a jury; judgment on the finding or verdict; execution upon tire judgment; that the judgment debtor cannot be imprisoned for failure to satisfy, the judgment of the court; that a failure to obey an order of the court may be made the subject of a contempt proceeding followed by imprisonment as a punishment for the refusal to obey the order; that the defendant may be compelled to testify at the instance of the plaintiff; and that a verdict may be rendered on concurrence of three-fourths or more of the members of the jury..
On the other hand, a bastardy proceeding involves the following:
A complaint may be filed by an unmarried pregnant woman and a warrant issued for the accused, who may be arrested and committed to jail in the absence of a recognizance for his appearance at the trial. The accused’s sureties may surrender him to the court and. be released from the recognizance, in which event the-accused is returned to jail: unless a new recognizance is.given. If the accused fails to appear im court his- recognizance may. be .-forfeited . and . the *65 amount of the forfeiture applied to the payment of the judgment. The issue whether the accused is the putative father of' the child of the complainant is tried to a jury and the preliminary examination is given in evidence by complainant. A preponderance of the evidence is sufficient to support a judgment of filiation. The accused may testify, but whether he shall be required to testify in the case is a matter of conflict in the decisions of the Courts of Appeals. A verdict of guilty or not guilty is rendered by the jury, and if accused is found guilty by the jury the court shall adjudge him to be the reputed father of the bastard child, if living, and shall order him to pay the complainant such sum of money as the court may find to be necessary for her support, maintenance and necessary expenses caused by the pregnancy and childbirth, together with costs of prosecution, and a reasonable weekly sum for the support and maintenance of the child up to 18 years of age. If the accused fails to pay or give security for the payment of the judgment, he shall be committed to jail until he complies with the order of the court, not as upon contempt of court, but to enforce the satisfaction of the judgment. The judgment of filiation shall not be a bar to his prosecution for the offense of failure to support his illegitimate child. Sections 12110 to 12123, inclusive, General Code.
The Ohio Bastardy Act was first enacted by the General Assembly of Ohio at its third session in 1805 (act of February 20, 1805, 3 Ohio Laws, 167) in substantially thé same form as the present statutes on that subject. On February 2, 1824, the General Assembly adopted a Bastardy Act repealing the act of February 20, 1805, but the essential provisions of the act were the same as those in the act it superseded. 22 Ohio Laws, 368.
In a complete revision of the Ohio Bastar.dy Act *66 in 1873, the General Assembly enacted what was then Section 5625, Revised Statutes (see '70 Ohio Laws, 113), in substantially the same form as Section 12122, General Code, which is as follows:
“When, before the court to which he is recognized to appear, the accused pleads not guilty of the charge, or, having been recognized, fails to appear, the court shall order the issue to be tried by a jury. At the trial, the examination before the justice shall be given in evidence by the complainant.”
In passing, it is to be noted that this provision for a jury trial in bastardy proceedings antedated the constitutional provision permitting a jury verdict by the concurrence of three-fourths or more of the members of the jury and antedated Section 11420-9 General Code, making statutory authority for such a verdict.
On April 2, 1906, the 77th General Assembly of Ohio created a codifying commission to recodify the statutes of Ohio. 98 Ohio Laws, 221. This commission completed its work, and the 78th General Assembly, on February 14, 1910, adopted the report of the commission by the enactment of Section 13765, General Code, to the effect that “the general statutes herein revised and consolidated, with the parts, titles, divisions, subdivisions, chapters and sections herein designated, shall be known and recognized as ‘The General Code.’ ”
In such codification, a bastardy proceeding was included under Part Third, Title 4 (Proceedings in Common Pleas Court), and Division 8'(Sections 12103 to 12147) as “quasi-criminal actions” including “amercement,” “bastardy,” and “contempt.” It is also pertinent to observe that the word, “quasi,” used in the Code is a Latin word in frequent use in the civil law signifying “as if” or “almost.” .It marks a resemblance and supposes a slight difference be *67 tween two objects or categories. 51 Corpus Juris, 119. The word implies a strong superficial analogy, but negates the idea of identity. United States v. Harbin, 27 F. (2d), 892.
It is also pertinent to observe that this class or type of proceedings is not included within the scope of the Code of Civil Procedure embodied in Division 2 of the same title (Sections 11237 to 11375); that no jury is provided for quasi-criminal actions except by special enactment; and that when Section 11420-9, General Code, was enacted into the Code of Civil Procedure in 1913, the General Assembly did not amend Section 12122, General Code, a part of the Bastardy Act which had been in effect since 1873. And, although the General Assembly has designated certain “special actions” (Part Third, Title 4, Division VII) as “civil actions,” such as actions to contest a will (Section 12059, General Code) and declaratory judgments (Section 12107-9, General Code), it has not done so as to other special actions such as an action in replevin (Sections 12067 and 12068, General Code).
Incidentally, the accused urges that if a bastardy proceeding were a “civil action” such statutory provision would be unnecessary and would be mere surplusage.
As an aid to the solution of this problem, recourse may be had to the historical construction of legisla-, tion relating to the subject of bastardy as reflected by the decisions of this court within a period of more than a century last past. Tn the early case of Devinney v. State, Wright, 564, 565, this court in 1834 held that a bastardy proceeding is quasi-criminal in nature. In the case of Perkins v. Mobley, 4 Ohio St., 669, Judge Ranney, referring' to a bastardy proceeding, said:
“In many of the states, begetting a bastard child *68 is made an offense, and punished by indictment; but in this state it is not so. The proceeding here is not strictly civil or criminal. It neither punishes a crime, nor gives redress for a civil injury. * * * If found guilty, he [the defendant] shall be adjudged the reputed father of the child, and shall stand charged with the maintenance thereof, in such sum or sums as the court shall order and direct, with payment of costs of prosecution; for which he must give security, or go into custody.”
In Hawes, Commr., v. Cooksey, 13 Ohio, 242, this court held that an order for the maintenance of an illegitimate child is not subject to bankruptcy, and the putative father cannot be discharged from the order by taking the benefit of the bankruptcy act. In the course of the opinion in that case, Judge Read said:
“It is contended that the prosecution under the statute is a civil proceeding, and therefore the money directed to be paid under it must be regarded in the light of a debt.
“It is sometimes called a quasi-criminal proceeding, that is, it is the enforcement of a moral duty arising from a criminal act, not prosecuted under the forms of a trial for a criminal offense. The act of the putative father is a crime against the peace and good order of society,,and when accomplished through the medium of seductive arts, involving the highest turpitude. The statute does not contemplate the punishment of the criminal act itself, but only the enforcement of the moral duty of maintaining the child, consequent upon the act. From the nature of the proceeding, therefore, it can not be argued that the.money awarded is a civil debt.”
In Musser v. Stewart, 21 Ohio St., 353, the accused was found guilty and was ordered to pay $1,000 for the support of the child. An order was sought to *69 require him to give security for performance of the order and, upon his failure to do so, to commit him to jail until he complied with the order. The accused claimed that such order was in conflict with Section 15, Article I of the Ohio Constitution, which provides that “no person shall be imprisoned for debt in any civil action, on mesne or final process, unless in cases of fraud.” The court held that the constitutional provision against imprisonment for debt did not apply to bastardy cases. The court said:
“The statute is in the nature of a police regulation. Its main object is to furnish maintenance for the child, and indemnity to the public against liability for its support. The act of the putative father is regarded as an offence against the peace and good order of society; and the penalty which the law imposes for his transgression, is to enforce upon him the duty of making provision for the maintenance of his illegitimate offspring.” (Italics supplied.)
To the same effect is Belding v. State, ex rel. Heifner, 121 Ohio St., 393, 169 N. E., 301, wherein the accused complained that the statute made no provision for a right of trial by jury as to the amount of payment and unconstitutionally provided for an order of imprisonment in default of compliance with the order to pay. This court held that the obligation created by Section 12123, General Code, as amended April 30, 1923, is not a debt within the meaning of Section 15, Article I of the Ohio Constitution, and that an order in a bastardy proceeding that the accused should be committed to jail, there to remain, except as provided in Section 12124, General Code, until he complies with the order of the court does not violate the constitutional provision either as to right of trial by jury or prohibition against imprisonment for debt. The same rule applies to orders for the payment of alimony. State, ex rel. Cook, v. Cook, 66 Ohio St., 566, 64 N. E., 567.
*70 In State v. Veres, 75 Ohio St., 138, 78 N. E., 1005, this court said:
“And the remedies they [bastardy and nonsupport of minor child] afford for the enforcement of this duty being entirely consistent with each other, the rule is well settled that the satisfaction of one is the only bar to the prosecution of the other.”
In McKelvy v. State, 87 Ohio St., 1, 99 N. E., 1076, a bastardy action, this court said: “The law has thus expressly provided practically the same remedy to accomplish the same purpose under both acts [bastardy and failure to support minor child].”
The case of Dimmitt v. State, ex rel. Milburn, 112 Ohio St., 691, 148 N. E., 90, was an action on a supersedeas bond in a proceeding in error to obtain a stay upon a judgment of filiation in a bastardy case. The question was whether an action could be maintained on the bond to compel payment of the judgment in tho original proceeding. The appellant claimed that the bond was given under the criminal statutes which did not contemplate the payment of any judgment, and that a bastardy action is quasi-criminal in nature and partakes more nearly the qualities of a criminal action.
This court said:
“It is true that the issues are made by affidavit, and not by petition and answer, and it is true that the form of verdict is guilty or hot guilty, but it is also true that the relief sought is not punishment of the defendant, but to provide for the support and maintenance of the child, and to indemnify the public against the child becoming a public charge. The action is therefore criminal in form, but the relief sought and the ultimate end to be attained are clearly of a civil nature.”
In Duncan v. State, ex rel. Williams, 119 Ohio St., 453, 164 N. E., 527, this court held:
*71 “A bastardy proceeding is subject to the .procedure provided in the Code of Civil Procedure, and a judgment rendered in such a proceeding can only be reviewed if an error proceeding is filed within seventy days from the date of the entry of judgment in the court from which such error proceeding is prosecuted.”
In that case, the accused, in an attempt to appeal from the judgment of filiation from the Court of Appeals to this court, failed to file his petition in error within 70 days from the date of the final entry in the Court of Appeals, as required by Section 12270, General Code. The state made a motion to dismiss the appeal. The accused claimed that a bastardy proceeding was not a civil action and that he was not required to file his petition in error within 70 days as required by the Civil Procedure Act. In the course of his opinion Chief Justice Marshall said: “It has never been definitely decided by this court whether a bastardy proceeding is civil or criminal.” He then reviewed cases already noted in this opinion and bearing on the character of a bastardy proceeding and continued:
“The lower courts of this state have held that only a preponderance of evidence is necessary to justify a verdict of guilty, and that a verdict may be rendered by concurrence of not less than three-fourths of the jury. We are therefore constrained to hold that this is a civil proceeding, as distinguished from a criminal proceeding, and that therefore the limita^ tion of Section 12270 of the Civil Code is applicable.”
Much of the confusion as to the character of the procedure in bastardy cases comes about by the fact that there is no independent provision made for procedure in bastardy proceedings and as a consequence the procedure must necessarily follow either the provisions of the Code of Civil Procedure or the provisions of the Code of Criminal Procedure, with the *72 result that the courts have generally accepted and followed the provisions of the Civil Code in the absence of specific requirements in the Bastardy Act itself.
The view that, although bastardy proceedings possess the attributes of both civil and criminal proceedings, they are in purpose and effect essentially civil is based on a fair balance of the characteristics and the fact that bastardy proceedings have more civil than criminal attributes. Among these important .characteristics are the facts that the courts agree that a preponderance of the evidence is sufficient to support a judgment of filiation rather than proof beyond a reasonable doubt; and that the accused can not plead double jeopardy in case of a reversal of a judgment against him for error.
The Courts of Appeals of this state are in conflict as to whether an accused may be compelled to testify at the instance of the prosecution.
In Burt v. State, ex rel. Cook, 79 Ind., 359, and in State v. Jeffrey, 188 Minn., 476, 247 N. W., 692, it was held that the defendant in a bastardy proceeding may be called by the plaintiff on cross-examination on the theory that the, action is civil and not criminal. Several of the' Courts of Common Pleas and of the Courts of Appeals of this state in determining that a proceeding in bastardy is civil rather than criminal rely heavily upon the opinions of this court in Hawes, Commr., v. Cooksey, supra, and Musser v. Stewart, supra, from which quotation has already been made in this opinion.
There is much support to be found for the view that the members of the Constitutional Convention which authorized the change in the jury requirement in “civil cases” used that term as comprehending all cases other than purely criminal cases. A study of the Proceedings and Debates of the Constitutional *73 Convention of 1912, pages 129 to 131, 141, 142, 168 to 172, and 175 to 198, in reference to the amendment, clearly discloses that the members of the convention understood that the amendment would apply to all cases not denominated criminal cases. Numerous attempts were made to include criminal cases within the amendment provision, but were defeated on the theory that the amendment should apply to all but criminal cases.
This court, in view of the historical background of the legislation relating to this matter and in view of what appears to be the long settled practice of the inferior courts of this state, is constrained to hold that a bastardy proceeding is essentially a civil action and that the trial court committed no error in the instant case in accepting the' verdict of guilty concurred in by nine members of the jury.
On examination, we do not find any reversible error as to the other assignments by the accused. Therefore, the judgment of the Court of Appeals is affirmed.

Judgment affirmed.

Weygandt, C. J., Zimmerman, and Matthias, JJ., concur.
Stewart, Middleton, and Taft, JJ., dissent.