OPINIONS OF THE SUPREME COURT OF OHIO
**** SUBJECT TO FURTHER EDITING ****

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio.  Attention:  Walter S. Kobalka, Reporter, or Deborah J. Barrett, Administrative Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE:  Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public.  The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

Zoppo et al., Appellants, v. Homestead Insurance Company, Appellee.
[Cite as Zoppo v. Homestead Ins. Co. (1994),     Ohio St.3d .]

Insurance -- Insurer fails to exercise good faith in the processing of a claim of its insured, when -- courts -- Trial procedure -- R.C. 2315.21(C)(2) violates the right to trial by jury under Section 5, Article I of the Ohio Constitution.

1.  An insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor.  (Hart v. Republic Mut. Ins. Co. [1949], 152 Ohio St. 185, 39 O.O. 465, 87 N.E.2d 347, and Staff Builders Inc. v. Armstrong [1988], 37 Ohio St.3d 298, 525 N.E.2d 783, approved and followed; Slater v. Motorists Mut. Ins. Co. [1962], 174 Ohio St. 148, 21 O.O.2d 420, 187 N.E.2d 45, paragraph two of the syllabus, overruled; Motorists Mut. Ins. Co. v. Said [1992], 63 Ohio St.3d 690, 590 N.E.2d 1228, overruled to the extent inconsistent herewith.)

2.  R.C. 2315.21(C)(2) violates the right to trial by jury under Section 5, Article I of the Ohio Constitution.

(No. 93-1616 -- Submitted November 1, 1994 -- Decided December 30, 1994.)

Appeal from the Court of Appeals for Cuyahoga County, No. 62926.

In the early morning hours of October 13, 1988, Windy's Bar Restaurant, an establishment owned and insured by Donald Zoppo, was destroyed by fire.  The fire was incendiary in nature and was started with kerosene, a liquid accelerant.  At the time of the fire, Zoppo had an insurance contract in effect issued by Homestead Insurance Company.  The coverage on the Homestead policy was $50,000 for the building and $65,000 for its contents.

Following its investigation, Homestead denied coverage to Zoppo. Homestead concluded that there was sufficient evidence that Zoppo had participated in setting the fire. Further, Homestead found that Zoppo had made material misrepresentations regarding his whereabouts on the night of the fire and regarding whether he had additional insurance.

Zoppo then brought suit against Homestead for breach of the insurance contract and for the tort of bad faith refusal to settle. Zoppo sought punitive damages in connection with the bad faith claim. The case went to trial before a jury.

After Zoppo's case in chief, Homestead moved for a directed verdict on the bad faith and punitive damages claims. The court denied these motions. The court instructed the jury on the relevant law. The court's instruction on bad faith was based upon the reasonable justification standard as enunciated in case law prior to Motorists Mut. Ins. Co. v. Said (1992), 63 Ohio St.3d 690, 590 N.E.2d 1228.

The jury returned verdicts for Zoppo in the sum of $80,000 in compensatory damages on the breach of contract claim and $187,800 on the bad faith claim ($122,800 in compensatory damages plus $65,000 in attorney fees). The jury also found that Zoppo was entitled to punitive damages. Pursuant to R.C. 2315.21(C)(2), the trial court set the amount of punitive damages at $50,000.

Homestead appealed and Zoppo cross-appealed. During the pendency of these appeals, this court decided Said, supra, which did away with the reasonable justification standard and made intent an element of bad faith.

The court of appeals affirmed the breach of contract claim but reversed the trial court's judgment on the issue of bad faith. The court of appeals held that there was no evidence of wrongful intent on the part of Homestead in denying Zoppo's claim. Hence, it found that the trial court erred in denying Homestead's motion for a directed verdict on the bad faith claim. The court of appeals also vacated the award of punitive damages and attorney fees.

The cause is now before this court pursuant to the allowance of a motion to certify the record.

Robert P. Rutter, for appellants.

Gallagher, Sharp, Fulton & Norman, Alan M. Petrov, D. Cheryl Atwell and Timothy J. Fitzgerald, for appellee.

Clark, Perdue, Roberts & Scott Co., L.P.A., Edward L. Clark and Dale K. Perdue; Nurenberg, Plevin, Heller & McCarthy and Andrew P. Krembs, urging reversal for amicus curiae, Ohio Academy of Trial Lawyers.

Murray & Murray Co., L.P.A., Dennis E. Murray, Sr., and Kirk J. Delli Bovi, urging reversal for amicus curiae, Board of Erie County Commissioners.

Vorys, Sater, Seymour & Pease, William D. Kloss, Robert N. Webner and Julie A. Schafer, urging affirmance for amicus curiae, Ohio Insurance Institute.

Young & Alexander Co., L.P.A., Mark R. Chilson and Paul G. Hallinan; Meyers, Hentemann, Schneider & Rea Co., L.P.A., and Henry A. Hentemann, urging affirmance for amicus curiae, State Farm Insurance Companies.

Weston, Hurd, Fallon, Paisley & Howley, Timothy D.

Johnson, William H. Baughman, Jr., Robert D. Rosewater and Gregory E. O'Brien, urging affirmance for amicus curiae, Ohio Association of Civil Trial Attorneys.

Francis E. Sweeney, Sr., J.  The issues before this court are:  (1) whether actual intent by the insurer to refuse to fulfill its contract with the insured is a requisite element of the tort of bad faith as held in Said; and (2) whether R.C. 2315.21(C)(2), requiring the court to set the amount of punitive damages even in jury trials, is violative of the right to trial by jury.  For the reasons that follow, we overrule Said, and hold that actual intent is not an element of the tort of bad faith.  We further hold that R.C. 2315.21(C)(2) violates the right to trial by jury.  Accordingly, we reverse the judgment of the court of appeals.

I

Bad Faith

This court must initially determine the proper standard used to decide whether an insurer has breached its duty to its insured to act in good faith.  In deciding this issue, it is necessary to revisit our decision in Motorists Mut. Ins. Co. v. Said, supra, 63 Ohio St.3d 690, 590 N.E.2d 1228.

In Said, we held that:

"A cause of action arises for the tort of bad faith when an insurer breaches its duty of good faith by intentionally refusing to satisfy an insured's claim where there is either (1) no lawful basis for the refusal coupled with actual knowledge of that fact or (2) an intentional  failure to determine whether there was any lawful basis for such refusal. Intent that caused the failure may be inferred and imputed to the insurer when there is a reckless indifference to facts or proof reasonably available to it in considering the claim." (Emphasis added.)  Id. at paragraph three of the syllabus.

Rather than clarify the standard of proof required in the area of bad faith litigation as the Said decision set out to do, this court has caused greater confusion by erroneously making intent an element of the tort of bad faith.

Until Said, the element of intent had been notably absent from this court's definition of when an insurer acts in bad faith.  In fact, with the exception of Said and the four-to-three decision of Slater v. Motorists Mut. Ins. Co. (1962), 174 Ohio St. 148, 21 O.O.2d 420, 187 N.E.2d 45, over the past forty-five years this court has consistently applied the "reasonable justification" standard to bad faith cases. According to this standard, first announced in 1949 in the case of Hart v. Republic Mut. Ins. Co. (1949), 152 Ohio St. 185, 39 O.O. 465, 87 N.E.2d 347, and reaffirmed in Hoskins v. Aetna Life Ins. Co. (1983), 6 Ohio St.3d 272, 6 OBR 337, 452 N.E.2d 1315, and Staff Builders, Inc. v. Armstrong (1988), 37 Ohio St.3d 298, 525 N.E.2d 783, "an insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor."  Id. at 303, 525 N.E.2d at 788.  Intent is not and has never been an element of the reasonable justification standard.  Hence, in deciding Said, supra, and in relying upon the erroneous Slater decision, this court departed from forty-five years of precedent.  By

expressly overruling Said and Slater, we will be following the logical progression of case law that has developed over the years.

We reject appellee's contention that under the doctrine of stare decisis, we must adhere to our decision in Said. The Said decision was an aberration that failed to follow clearly established precedent. As stated in Helvering v. Hallock (1940), 309 U.S. 106, 119, 60 S.Ct. 444, 451, 84 L.Ed. 604, 612: "[S]tare decisis is a principle of policy and not a mechanical formula of adherence to the latest decision, however recent and questionable, when such adherence involves collision with a prior doctrine more embracing in its scope, intrinsically sounder, and verified by experience." In this case, stare decisis dictates that we correct our previous mistakes and reinstate the reasonable justification standard.

Our review of the record indicates the trial court correctly instructed the jury on the law of bad faith using the reasonable justification standard. There was ample evidence to support the jury's finding that Homestead failed to conduct an adequate investigation and was not reasonably justified in denying Zoppo's claim.

From the outset, Homestead's inquiry focused primarily on Zoppo, who claimed that he was in Pennsylvania hunting at the time of the fire. Homestead's investigators did not seriously explore evidence that other individuals, who were previously ousted from the bar by Zoppo, had threatened to burn the bar down. In fact, there was a previous attempt made to set the bar on fire. Two of the ousted men bragged in public that they were responsible for the attempted fire and one said he would be back "to finish the job." Following the actual fire, which occurred only three weeks after the attempted arson, one of the ousted men told a group of bar patrons that he had set the fire.

Despite these leads, and despite the fact that there appeared to have been a robbery and break-in (machines were broken into and one of the windows was broken), there was evidence at trial that the Homestead investigators failed to locate certain key suspects, verify alibis, follow up with witnesses or go to Pennsylvania to determine Zoppo's whereabouts on the morning of the fire. In fact, evidence was presented that when interviewing some of the alleged perpetrators, the investigators did little more than ask such cursory questions such as whether they were responsible for the fire. When they answered negatively, their questioning ceased.

The investigators instead focused on the inconsistencies in Zoppo's statements concerning the sequence of events the morning of the fire and on the statement of a bar patron, Dave Pogue. Pogue initially corroborated the theory that the ousted men were responsible for the fire, but he later implicated Zoppo. However, there was evidence that he was paid for this later statement.

Part of Homestead's denial of the claim was based upon its belief that Zoppo had a motive for destroying his building, namely, financial gain. Homestead argued that the bar was overinsured and that it was losing money. However, there was evidence to the contrary. Although Zoppo had purchased the bar six months prior to the fire for $10,000 and had insured it for $50,000, Homestead, in its initial underwriting report, had

stated that the building had a market value of $95,798. Furthermore, Zoppo had no debts and had actually made improvements to the bar prior to the fire. Moreover, before the denial of the claim, Zoppo attempted to prevent demolition so that he could rebuild the bar.

Finally, Zoppo's expert, a claims consultant, testified that the Homestead investigation was inadequate and that Homestead was not justified in denying the claim.

Hence, based on the foregoing, we reinstate the trial court's finding of bad faith.

## II
## Damages

The next issue to be addressed is whether R.C. 2315.21(C)(2) violates the right to trial by jury. R.C. 2315.21(C)(2) provides:

"In a tort action, whether the trier of fact is a jury or the court, if the trier of fact determines that any defendant is liable for punitive or exemplary damages, the amount of those damages shall be determined by the court."

The right to a trial by jury is a fundamental constitutional right which derives from the Magna Carta. Cleveland Ry. Co. v. Halliday (1933), 127 Ohio St. 278, 284, 188 N.E. 1, 3. The right is guaranteed by Section 5, Article I of the Ohio Constitution. Although the constitutional right to a jury trial is not guaranteed in all cases, the right extends to those causes of action where the right existed at common law. Sorrell v. Thevenir (1994), 69 Ohio St.3d 415, 421, 633 N.E.2d 504, 510; Belding v. State ex rel. Heifner (1929), 121 Ohio St. 393, 169 N.E. 301, paragraph one of the syllabus.

Thus, in analyzing the validity of R.C. 2315.21(C)(2), we must first determine whether there existed a common-law right for a jury to assess the amount of punitive damages.

The English courts first recognized punitive damages in Wilkes v. Woods (1763), 98 Eng.Rep. 489. Thereafter, as early as 1791, American juries began awarding punitive damages and assessing their amount. Corvell v. Colbaugh (1791), 1 N.J.L. 77. In 1859, the common-law right to have juries award punitive damages was regarded as "settled" in Ohio. Roberts v. Mason (1859), 10 Ohio St. 223, 225. In Roberts, this court emphasized the importance of the jury's role in determining punitive damages when it stated: "[T]welve intelligent and impartial men, acting under oath, and subject, in a proper case, to the control of the court, are not likely to do any great wrong; and it seems to us that the power which this rule confers upon a jury, may, in practice, operate as a salutary restraint upon the evil passions of bad men." Id.

Prior to the 1987 enactment of R.C. 2315.21(C)(2), 142 Ohio Laws, Part I, 1661, 1691, juries in this state had the integral role of determining not only when punitive damages were justified but also of assessing the amount of such damages. Clearly, the assessment of punitive damages by the jury stems from the common law and is encompassed within the right to trial by jury. However, the legislature, by enacting R.C. 2315.21(C)(2) and by permitting only the court to determine the amount of punitive damages, has in effect abrogated the common-law right of the jury to assess the amount of punitive damages.

It is well settled that the right to trial by jury "'cannot be invaded or violated by either legislative act or judicial order or decree.'" Sorrell v. Thevenir, supra, 69 Ohio St.3d at 421, 633 N.E.2d at 510, quoting Gibbs v. Girard (1913), 88 Ohio St. 34, 102 N.E. 299, paragraph two of the syllabus. Since R.C. 2315.21(C)(2) impairs the traditional function of the jury in determining the appropriate amount of damages, we hold that R.C. 2315.21(C)(2) violates the right to trial by jury under Section 5, Article I of the Ohio Constitution.

Finally, in so ruling, we considered but were unpersuaded by appellee's reliance on Digital & Analog Design Corp. v. N. Supply Co. (1992), 63 Ohio St.3d 657, 590 N.E.2d 737. In Digital, this court held that a litigant does not have a right to trial by jury to determine the amount of attorney fees. The discussion in Digital pertaining to the validity of R.C. 2315.21(C) is merely dicta since in Digital, the assessment of punitive damages was not at issue. However, we do reject the reasoning espoused in Digital which treats the right to trial by jury in cases assessing attorney fees the same as that of punitive damages. Id. at 662-663, 590 N.E.2d at 742-743. We believe the right to have a jury assess punitive damages differs from the jury's right to assess attorney fees. With punitive damages, the right stems from common law; however, no such right existed at common law for attorney fees.

We must next determine whether there were sufficient facts presented for the jury to consider an award of punitive damages. In Staff Builders, Inc. v. Armstrong (1988), 37 Ohio St.3d 298, 525 N.E.2d 783, paragraph two of the syllabus, we stated that: "Punitive damages may be recovered against an insurer that breaches its duty of good faith in refusing to pay a claim of its insured upon proof of actual malice, fraud or insult on the part of the insurer." In this case, since Homestead did not act fraudulently in denying Zoppo's claim, the question becomes whether Homestead acted with actual malice. Actual malice is defined as "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." (Emphasis sic.) Preston v. Murty (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, syllabus.

There is no evidence here of hatred, ill will or a spirit of revenge. Thus, the trial court had the obligation to determine that there was sufficient evidence that Homestead consciously disregarded Zoppo's rights. Id. The record reveals a one-sided inquiry by Homestead investigators as to who was at fault. They did not adequately question suspects or follow up on leads. Homestead breached its affirmative duty to conduct an adequate investigation. The award of punitive damages was justified.

Finally, regarding the issue of compensatory damages and attorney fees, we hold that an insurer who acts in bad faith is liable for those compensatory damages flowing from the bad faith conduct of the insurer and caused by the insurer's breach of contract.

However, contrary to appellants' position, an insured is

not automatically entitled to interest or attorney fees.  An insured who seeks prejudgment interest must follow the specific statutory procedures set forth in R.C. 1343.03.  Attorney fees may be awarded as an element of compensatory damages where the jury finds that punitive damages are warranted.  Columbus Finance, Inc. v. Howard (1975), 42 Ohio St.2d 178, 183, 71 O.O.2d 174, 177, 327 N.E.2d 654, 658.

For the following reasons, we reverse the judgment of the court of appeals on the issues of bad faith and the constitutionality of R.C. 2315.21(C)(2) and reinstate the jury's finding of punitive damages and attorney fees.  We remand this cause to the trial court for a hearing for a jury to determine the amount of punitive damages.

Judgment reversed<br>and cause remanded.

Douglas and Resnick, JJ., concur.

A.W. Sweeney, J., concurs in the syllabus and judgment only.

Pfeifer, J., concurs in part and dissents in part.

Moyer, C.J., and Wright, J., dissent.

Zoppo v. Homestead Ins. Co.

Pfeifer, J., concurring in part and dissenting in part.  I concur with the majority's syllabus paragraphs and the holding in Part I of its opinion.  Because this case does not merit the awarding of punitive damages, however, I dissent from the result reached in Part II of the majority's opinion.

The majority concludes that Homestead "consciously disregarded" Zoppo's right to collect for his loss.  I disagree.  The record indicates that Homestead's investigation was less than thorough, but does not reveal any conscious conduct by Homestead to deprive Zoppo of his insurance benefits.  The trial court should not have submitted the issue of punitive damages to the jury.

Wright, J., dissenting.  I respectfully dissent to the majority opinion.  With respect to Part I, I would continue to apply the test for bad faith as articulated in Motorists Mut. Ins. Co. v. Said (1992), 63 Ohio St.3d 690, 590 N.E.2d 1228.  See, also, Hoskins v. Aetna Life Ins. Co. (1983), 6 Ohio St.3d 272, 6 OBR 337, 452 N.E.2d 1315.

I also disagree with the majority's unhappy determination in Part II that R.C. 2315.21(C)(2) is unconstitutional.  Though the majority seems determined to declare an important piece of tort reform legislation unconstitutional, I believe that accepted and traditional jurisprudence requires that we reach the opposite result.  The analysis used in this matter and other recent cases in which the majority has thwarted the efforts of the General Assembly to accomplish tort reforms bring to mind a marvelous Yiddish proverb:  "az di ershte shure iz krum toyg der gantser briv oyf kapores, 'If the first line is crooked the whole letter is good for nothing,' or 'Ill begun, all undone.'"[1]

The right to a trial by jury under Section 5, Article I of the Ohio Constitution applies only to those causes of action in which an individual had a right to a jury trial at the time the 1802 Ohio Constitution was adopted.  Willyard v. Hamilton (1836), 7 Ohio 111, 115-116; Belding v. State ex re. Heifner (1929), 121 Ohio St. 393, 169 N.E. 301.  At the time the Ohio

Constitution was adopted, plaintiffs had a right to a jury trial for causes of action involving tort. See Kneisly v. Lattimer-Stevens Co. (1988), 40 Ohio St.3d 354, 533 N.E.2d 743. As such, under Section 5, Article 1, a party has a right to a jury trial in a tort action.

However, appropriate analysis in this case cannot, and should not, end with the broad conclusion that an individual has a jury-trial right with respect to tort actions. This case presents a much narrower question: whether a plaintiff has a right to have a jury decide the amount of a punitive damages award. That is the issue and the majority simply fails to come to grips with it.

A right to a jury trial attaches only to those elements of a trial that are fundamental and essential to the jury system. Tull v. United States (1987), 481 U.S. 412, 426, 107 S.Ct. 1831, 1840, 95 L.Ed.2d 365, 378; Colgrove v. Battin (1973), 413 U.S. 149, 93 S.Ct. 2448, 37 L.Ed.2d 522.2 Therefore, we must consider whether providing a jury with the authority to determine the amount of punitive damages is essential to the jury system. As the United States Supreme Court stated in Colgrove:

"'*** Only those incidents which are regarded as fundamental, as inherent in and of the essence of the system of trial by jury, are placed beyond the reach of the legislature. ***'" Id. at 156, 93 S.Ct. at 2452, 37 L.Ed.2d at 528, at fn. 11 (quoting Scott, Trial by Jury and the Reform of Civil Procedure [1918], 31 Harv. L. Rev. 669, 671).

It is axiomatic that the purpose of a tort action is to fully compensate the plaintiff. See Bailey v. Allberry (1993), 88 Ohio App.3d 432, 624 N.E.2d 279 and Miller v. Irvin (1988), 49 Ohio App.3d 96, 550 N.E.2d 501. Given the purpose of a tort action, the fundamental role of a jury is to decide questions of liability and the extent of compensation. For this reason, a plaintiff has a right to have a jury determine liability. I can accept the principle that the compensatory nature of a tort action also extends to provide the plaintiff with a right to have the jury determine the amount of actual damages. See Fantozzi v. Sandusky Cement Prod. Co. (1992), 64 Ohio St.3d 601, 612, 597 N.E.2d 474, 482 (actual damages compensate plaintiff for his injury). This conclusion is supported by the proposition that the determination of actual damages relies solely on findings of fact, something for which the jury is uniquely suited. See Shamblin's Ready Mix, Inc. v. Eaton Corp. (C.A.4 1989), 873 F.2d 736, 741.

However, the central issue in this case is whether a plaintiff has a right to a jury determination of the amount of punitive damages in a tort action. A review of the appropriate case law leads to the inescapable conclusion that a plaintiff does not have such a right.3

The purpose of punitive damages is not to compensate the plaintiff, but rather to punish the defendant. "The policy for awarding punitive damages in Ohio '*** has been recognized *** as that of punishing the offending party and setting him up as an example to other that they might be deterred from similar conduct.'" Preston v. Murty (1987), 32 Ohio St.3d 334, 335, 512 N.E.2d 1174, 1176 (quoting Detling v. Chockley [1982], 70 Ohio St.2d 134, 136, 24 O.O.3d 239, 240, 436 N.E.2d 208, 209).

See Western Union Tel. Co. v. Smith (1901), 64 Ohio St. 106, 116, 59 N.E. 890, 892.  As such, punitive damages are outside the underlying purpose of a tort action and the essential roles of the jury.  See Smith v. Printup (1993), 254 Kan. 315, 325-326, 866 P.2d 985, 994.  The United States Court of Appeals for the Fourth Circuit reached the same result in Shamblin's Ready Mix, Inc. v. Eaton Corp., supra, at 742: "It is clear that the amount of exemplary damages is not a fundamental element of the trial.  It is a remedy in the nature of a penalty designed to punish and deter reprehensible conduct."

The nature of the determination of a punitive-damages award also requires the conclusion that a plaintiff does not have a right to have a jury determine the amount of punitive damages.  Unlike actual damages, which are entirely fact sensitive, the determination as to the amount of punitive damages contemplates more than the facts at hand in the immediate trial.  In order to reach a fair punishment, the decision-maker must be able to compare the wrongful conduct in this case against similar conduct in other cases.  Additionally, such a broad perspective is essential in order to set a level of damages which, while fair, will adequately deter such wrongful conduct in the future.  This broad perspective, which is necessary to give effect to the purposes of punitive damages, makes the judge and not the jury the appropriate decision-maker.  The knowledge and experience necessary to set punitive damages effectively are unique to the judge alone.  In fact, the process of determining the amount of a punitive-damages award is directly analogous to the sentencing role of a judge in a criminal trial.  As such, the discretionary decision as to the amount of punitive damages to award in a particular case is not a "fundamental" element of the jury system.  Consequently, a plaintiff does not have a constitutional right to have a jury determine the amount of punitive damages and the General Assembly has the perfect right to place that responsibility on the judiciary.

In addition, plaintiffs have no general "right" to punitive damages.  The language of our cases show that punitive damages are permissive and not mandatory.  As we stated in Preston, supra: "Ohio courts, since as early as 1859, have allowed punitive damages to be awarded in tort actions which involve fraud, malice, or insult." (Emphasis added.)  32 Ohio St.3d at 334, 512 N.E.2d at 1175.  See Smith v. Printup, supra, at 325, 866 P.2d at 994 ("No separate right of action existed at common law for punitive damages.").  This conclusion is supported by Justice Scalia, who recently noted: "State legislatures and courts have the power to restrict or abolish the common-law practice of punitive damages."  Pacific Mut. Life Ins. Co. v. Haslip (1991), 499 U.S. 1, 39, 111 S.Ct. 1032, 1054, 113 L.Ed.2d 1, 33 (Scalia, J., concurring).  Because the legislature has the authority to abolish punitive damages, it may also regulate them.  See Smith v. Printup, supra, at 331-332, 866 P.2d at 997-998.  As such, the enactment of R.C. 2315.21(C)(2), which gives the trial court the power to determine the amount of punitive damages, was properly within the legislature's authority and is not unconstitutional.

Moyer, C.J., concurs in the foregoing dissenting opinion.
FOOTNOTE:

1   Samuel, In Praise of Yiddish (1971) 162.

2   Although these cases are intepreting the Seventh Amendment to the United States Constitution, the similarity between that provision and Section 5, Article I of the Ohio Constitution makes their analyses particularly persuasive.  See Digital & Analog Design Corp. v. N. Supply Co. (1992), 63 Ohio St.3d 657, 662, 590 N.E.2d 737, 742, fn.1.

3   Because the statute at issue leaves the determination as to whether a plaintiff is entitled to punitive damages with the jury, we do not need to consider whether a plaintiff has a right to have a jury make that determination.  The only issue is whether a plainiff has right to have a jury determine the amount of punitive damages, a responsibility placed by R.C. 2315.21(C)(2) upon the trial court.