*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2002 FED App. 0008P (6th Cir.)
File Name:  02a0008p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

JOSEPH L. HOWARD,
      *Plaintiff-Appellant,*

      *v.*

CITY OF BEAVERCREEK,
      *Defendant-Appellee.*

No. 00-4143

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 98-00541—Algenon L. Marbley, District Judge.

Submitted:  December 7, 2001

Decided and Filed:  January 9, 2002

Before:  SILER and BATCHELDER, Circuit Judges;
HOOD, District Judge.[*]

_____

[*] The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

---

**COUNSEL**

**ON BRIEF:** Michael C. Thompson, Dayton, Ohio, for Appellant. Robert Forrest Cowdrey, JENKS, SURDYK, OXLEY, TURNER & DOWD, Dayton, Ohio, for Appellee.

---

**OPINION**

---

SILER, Circuit Judge. Plaintiff Joseph L. Howard brought suit against the defendant City of Beavercreek ("Beavercreek") alleging that the denial of his request for a variance to Beavercreek's zoning law to accommodate his handicap violated 42 U.S.C. § 3604(f)(3)(B) of the Fair Housing Amendments Act of 1988 ("FHAA") and subsections 4112.02(H)(1), (4), (18), and (19) of the Ohio Revised Code. Howard appeals the district court's order granting summary judgment in favor of Beavercreek. For the reasons that follow, we **AFFIRM** the district court's judgment.

**BACKGROUND**

Howard owns a home in Beavercreek, Ohio, where he has lived with his wife and children since 1984. The home is located on a lot which is 255 feet deep and 110 feet wide. Howard's lot is separated from the adjacent lots on both sides by a split rail fence that is less than five feet eight inches in height. There is also a chain link fence, at least four feet high, that runs across the back of Howard's lot about thirty feet from the rear property line.

In 1996, Howard became concerned that the neighbors who lived on the west side of his property were spying on his family. Howard suffers from post traumatic stress disorder ("PTSD") and a heart condition. Because of the conditions at his home with regard to his neighbors, Howard felt that his

medical and psychological conditions were being exacerbated. Thus, he wanted to erect a six-foot privacy fence along the west side of his property to block his neighbors' view. He believed that this would eliminate any undue stress on his medical and psychological conditions and, in addition, would block leaves from blowing into his yard which he no longer could rake due to his heart condition.

The fence Howard intended to construct would run seventy feet from the southwest corner of his property to the street. Under Beavercreek's zoning ordinance, Howard was prohibited from erecting a six-foot fence along the first forty feet of the west property line running from the right-of-way to his house without first obtaining a variance.[1] The zoning ordinance, however, would permit him to build a six-foot fence along the remainder of his property without a variance. He applied for a variance in 1997. In support of his application, Howard provided a statement from his treating physician which detailed his medical and psychological conditions. After a public hearing in May 1998, the Board of Zoning Appeals for the City of Beavercreek denied Howard's request.

In December 1998, Howard filed suit against Beavercreek seeking damages under the FHAA, 42 U.S.C. § 3604(f)(3)(B), and damages, declaratory judgment and injunctive relief under Ohio law, Ohio Revised Code § 4112.02. He alleged that Beavercreek had discriminated against him, as a person who suffers from a handicap, by failing to consider his request for a reasonable accommodation to its zoning rules, when such an accommodation was necessary to afford him an equal opportunity to use and enjoy his dwelling.

The district court dismissed Howard's state law claims for damages and granted summary judgment in favor of

---

[1] Article 18.06.2 of the City of Beavercreek's zoning code provides: "No fence, wall or hedge shall rise over three (3) feet in height within any required front yard." The "required front yard" within the R1-A zoning district is forty feet from the front property line.

Beavercreek on Howard's claim under the FHAA and his state law claims for declaratory and injunctive relief. The district court explained that it dismissed Howard's state law claim for damages because Beavercreek, a political subdivision, was immune from liability for damages to property owners under Ohio's housing discrimination law. The court went on to find that although fact issues existed as to whether Howard's request for a variance was a reasonable accommodation under the FHAA, the city's denial of his request did not deny him the right to live in the neighborhood of his choice and, thus, did not violate the FHAA. Since the applicable sections of the Ohio Revised Code had language similar to that of the FHAA, the court used the same analysis when it reviewed and rejected Howard's state law claims for declaratory and injunctive relief. The court also determined that there was a second basis for granting summary judgment in favor of Beavercreek on Howard's FHAA claim. Because the "uncontroverted evidence" showed that the six-foot fence would cause a threat to pedestrian and vehicular traffic, the court held that Beavercreek was not required under § 3604(f)(9) of the FHAA to grant Howard's request for a variance. *See* 42 U.S.C. § 3604(f)(9).

### STANDARD OF REVIEW

We review a district court's order granting summary judgment *de novo* and its findings of fact for clear error. *See Grand Traverse Band of Ottawa and Chippewa Indians v. Director, Mich. Dep't of Natural Res.,* 141 F.3d 635, 638 (6th Cir.1998) (citations omitted). Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, summary judgment is appropriate if a party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

§ 4112.99 expressly imposes liability upon Beavercreek and the district court erred by concluding that his compensatory and punitive damages claims were barred by the Ohio municipal immunity statute.

Section 4112.99 makes no explicit reference to political subdivisions at all and Howard fails to cite any Ohio case law interpreting this section as imposing liability on a municipality. As Magistrate Judge Merz correctly pointed out, Howard's "interpretation would essentially 'swallow up' § 2744.02(B)(5) because it would make municipalities liable for damages, despite the general immunity sections, whenever any statute provides for liability, whether it mentions municipalities or not."

In sum, the district court correctly dismissed Howard's claims for damages based on its determination that Beavercreek was entitled to immunity under Ohio Revised Code § 2744.02(A)(1).

**AFFIRMED.**

granting summary judgment based on the safety hazard posed by the fence.

## B. Immunity

Next, we consider the district court's dismissal of Howard's state law claims for damages based on Ohio's municipal immunity statute. Ohio Revised Code § 2744.02(A)(1) provides, in pertinent part that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." Beavercreek qualifies as a political subdivision under the statute, *see* Ohio Rev. Code § 2744.01(F), and the enactment and implementation of a zoning ordinance is a government function. *See Singer v. Fairborn,* 598 N.E.2d 806, 810 (Ohio Ct. App. 1991). Howard argues that despite this immunity provision, his claim for damages is preserved by § 2744.02(B)(5), which provides:

In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to person or property when liability is expressly imposed upon the political subdivision by a section of the Revised Code, including, but not limited to, sections 2743.02 and 5591.37 of the Revised Code. Liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon a political subdivision, because of a general authorization in that section that a political subdivision may sue and be sued, or because that section uses the term "shall" in a provision pertaining to a political subdivision.

Section 4112.99 provides that "[w]hoever violates this chapter is subject to a civil action for damages." Ohio Rev. Code § 4112.99. This statute specifically provides for civil damages for violations of § 4112.02 alleged by Howard against Beavercreek. Thus, it is Howard's position that

## DISCUSSION

Howard argues that the district court erred by: 1) dismissing his federal fair housing claim on the grounds that the requested variance was not a "necessary" accommodation; 2) holding that there was "uncontroverted evidence" that the proposed six-foot fence would cause a safety hazard; and 3) imposing the state law immunity provision and dismissing his state law claim for damages. We will begin by considering the district court's conclusion that Howard's requested variance was not a necessary accommodation as defined under the FHAA.

## A. "Necessary" Accommodation

The FHAA makes it unlawful to discriminate against a person with a handicap by refusing "to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). This creates an affirmative duty on municipalities, like Beavercreek, to afford its disabled citizens reasonable accommodations in its municipal zoning practices if necessary to afford such persons equal opportunity in the use and enjoyment of their property. *See Smith & Lee Assocs., Inc. v. City of Taylor,* 102 F.3d 781, 794-795 (6th Cir. 1996) (holding that city had violated the FHAA by failing to allow adult foster care homes to operate in areas zoned only for single-family neighborhoods); *City of Edmonds v. Washington State Bldg. Code Council*, 18 F.3d 802, 806 (9th Cir. 1994), *aff'd*, 514 U.S. 725 (1995) ("The FHAA imposes an affirmative duty to reasonably accommodate handicapped people.").

When analyzing whether an accommodation is required under this Act, the three operative elements are "reasonable," "equal opportunity" and "necessary." *See Smith*, 102 F.3d at 794. An accommodation is "reasonable" when it imposes no "fundamental alteration in the nature of the program" or "undue financial and administrative burdens." *Id.* at 795 (quoting *Southeastern Community College v. Davis*, 442 U.S.

397, 410, 412 (1979)). "Equal opportunity" under the FHAA is defined as "giving handicapped individuals the right to choose to live in single-family neighborhoods, for that right serves to end the exclusion of handicapped individuals from the American mainstream." *Id.* at 794-95. Linked to the goal of equal opportunity is the term "necessary." *Id.* at 795. In order to prove that an accommodation is "necessary," "[p]laintiffs must show that, but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice." *Id.* (citing *Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir. 1995) ("[T]he concept of necessity requires at a minimum the showing that the desired accommodation will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability.")).

Howard argues that the district court erred when it held that the requested accommodation was not necessary under the FHAA, because Howard had enjoyed the housing of his choice without the fence since 1984, and he continued to live in his home after the problems with his neighbors began in 1996. Howard asserts that the requested variance would ameliorate the exacerbation of his handicap satisfying the necessity requirement in § 3604(f)(3)(B), as defined in *Smith* and *Bronk*. We conclude that the district court was correct in its decision that under the FHAA Howard failed to prove that his requested accommodation was necessary to afford him the equal opportunity to enjoy the housing of his choice.

In his deposition, Howard stated that because of his medical conditions he needed to avoid being upset. He explained that by erecting a six-foot fence, he could avoid being upset by precluding his neighbors from viewing his property from their lot. In addition, he felt that the fence would prevent leaves from blowing into his yard, which he could no longer rake because of his heart condition. Without the fence, Howard stated that he *may* be forced to move. In addition, one of his treating physicians stated only that "[i]t is *feasible* that the installation of the privacy fence *may* relieve this undue stress and allow Mr. Howard to return to his baseline status." This

evidence combined with the fact that Howard has lived in his home for several years without the requested variance illustrates that the denial of Howard's variance request has not denied him an equal opportunity to enjoy the housing or community of his choice. *See Robinson v. City of Friendswood*, 890 F.Supp. 616, 622 (S.D. Tex. 1995) ("The Plaintiff had the same disabilities and lived in the same house for years before he constructed the carport indicates that the ordinance did not prevent him form obtaining housing of his choice nor from living in the community of his choice.").

"The Act is intended to prohibit the application of special requirements through land-use regulations, restrictive covenants, and conditional or special use permits that have the effect of limiting the ability of [handicapped] individuals to live in the residence of their choice in the community." H.R. Rep. No. 100-711, at 24 (1988). Thus, local governments are prohibited from "applying land use regulations in a manner that will exclude people with disabilities entirely from zoning neighborhoods, particularly residential neighborhoods, or that will give disabled people less opportunity to live in certain neighborhoods than people without disabilities." *Smith*, 102 F.3d at 795 (citation omitted). Although the requested variance may have reduced some of the stress Howard reportedly was subjected to, Beavercreek's denial of Howard's variance request has neither excluded Howard from the neighborhood or residence of his choice, nor has it created less opportunity for Howard, as a handicapped person, to live in his neighborhood.

In sum, because Howard failed to present sufficient evidence to create a genuine issue of material fact as to whether the variance he requested was a necessary accommodation under § 3604(f)(3)(B), the district court correctly granted summary judgment in favor of Beavercreek on Howard's FHAA claim. Because we find that the district court correctly granted summary judgment based on the "necessary" prong of the Act, we need not address whether the district court was also correct in finding a second basis for