BUNDY et al., Appellants,

v.

FIVE RIVERS METROPARKS, Appellee.

[Cite as *Bundy v. Five Rivers Metroparks,* 152 Ohio App.3d 426, 2003-Ohio-1766.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 19462.

Decided April 4, 2003.

Ronald J. Maurer, for appellants.

Scott A. King and Edward C. Redder, for appellee Five Rivers Metroparks.

John L. Reyes and Ashley M. Manfull, for amicus curiae Ohio Park Districts.

Jim Petro, Attorney General, for state of Ohio.

_____

BROGAN, Judge

{¶ 1} Amber M. Bundy and Nicholas Moore appeal from the order of the Montgomery County Common Pleas Court, which dismissed their complaint against Five River Metroparks ("Five Rivers").

{¶ 2} The plaintiffs asserted in this complaint that Moore was a passenger in an automobile driven by Bundy on August 20, 2001, when a group of horses and mules owned by Five Rivers ran onto State Route 201. They alleged that one of the horses and one of the mules struck Bundy's automobile, causing both Moore and Bundy serious injury. The plaintiffs alleged that Five Rivers negligently, willfully, wantonly, and recklessly maintained its animals and failed to properly restrain and control its animals, permitting them to run at large on a public highway in violation of R.C. 951.02.

{¶ 3} Five Rivers moved to dismiss the plaintiffs' complaint, alleging that it failed to state a claim on which relief could be granted. Five Rivers argued that the trial court should take judicial notice that it is a "park district" established pursuant to R.C. 1545.01, and as a matter of law it was immune from liability for the plaintiffs' claim.

{¶ 4} The plaintiffs then amended their complaint to include a third claim that R.C. 2744.01 through 2744.10 are unconstitutional. They sought a declaratory judgment on this claim and served the Attorney General of Ohio so that the Attorney General could be heard in defense of the legislation. The Attorney General has not responded.

{¶ 5} In granting the motion to dismiss, the trial court found Five Rivers' argument persuasive that it was immune from tort liability under R.C. 2744.02(A)(1) and that the exception to immunity found at R.C. 2744.02(B)(5) was

inapplicable. The court also rejected the plaintiffs' claim that R.C. 2744.01 et seq. violated several provisions of Ohio's Constitution.

{¶ 6} In their first assignment of error, Bundy and Moore argue that the trial court erred in finding that the exception to sovereign immunity contained in R.C. 2744.02(B)(5) did not apply in this matter.

{¶ 7} The appellants concede for purposes of this appeal that the actions alleged to have been exercised by Five Rivers fall within the "governmental function" as defined by R.C. 2744.01(C)(2)(u). The appellants contend that the exception to immunity found at R.C. 2744.02(B)(5) applies to the facts alleged in their complaint. That section provides that a political subdivision is liable for injury, death, or loss to person or property when liability is *expressly* imposed upon the political subdivision by a section of the Revised Code. Appellants contend that R.C. 951.02 expressly imposes liability in this situation. That statute provides that no person who is the owner or keeper of horses or mules shall permit them to run at large in the public road or highway. Appellants note that R.C. 951.10 provides civil liability for all damages caused by a violation of R.C. 951.02 and that R.C. 951.99 provides that a violation of R.C. 951.02 is a misdemeanor of the fourth degree.

{¶ 8} Appellants argue that the recent case of *Campbell v. Burton* (2001), 92 Ohio St.3d 336, 750 N.E.2d 539, is very instructive regarding the express imposition of liability provided in R.C. 2744.02(B)(5). Appellants note that in *Campbell,* the Supreme Court held that a political subdivision could be held liable for its failure to perform a duty expressly imposed by R.C. 2151.421 to report known or suspected child abuse.

{¶ 9} Appellants argue that their case for liability is even stronger than the facts in *Campbell* because the legislature imposes both civil and criminal liability for violation of R.C. 951.02.

{¶ 10} In *Campbell,* Amber Campbell, an eighth grade student, filed an action through her parents against the Superintendent of Fairborn City Schools, the Board of Education of Fairborn City Schools, and a Fairborn school teacher for failing to report Amber's report of sexual abuse to the school teacher.

{¶ 11} The trial court in *Campbell* granted summary judgment to the defendants on the grounds that they were immune from liability pursuant to R.C. 2744.02(A)(1). This court affirmed the trial court, and the Ohio Supreme Court reversed our judgment. The Supreme Court held that R.C. 2151.421 expressly imposed liability because R.C. 2151.421(A) "requires that *certain* persons report known or suspected child abuse," to wit, school teachers, school employees, and school authorities.

{¶ 12} The appellants argue that Five Rivers is not immune from liability because liability is *expressly* imposed upon them by virtue of their status as a "person" as provided in R.C. 951.02. Appellants note that R.C. 1.59 provides that a "person" includes a corporation, and R.C. 1545.07 provides that a park district board is a body corporate and political.

{¶ 13} Five Rivers argues that R.C. 951.02 does not evince a clear intention to impose liability on governmental entities. Five Rivers notes that the statute lists neither park districts nor any particular agents of park districts but is merely a general statute applying to "all persons." Five Rivers argues that the General Assembly's failure to include governmental entities or political subdivisions in the definition of the word "person" leads to the one conclusion that it did not intend to bring these entities within its application. Second, Five Rivers argues that to constitute an exception to sovereign immunity, a statute must expressly include political subdivisions because statutes of general application are insufficient. In its support of this argument, Five Rivers cites the recent Sixth Circuit opinion of *Howard v. Beavercreek* (C.A.6, 2002), 276 F.3d 802. In *Howard*, the plaintiff sued Beavercreek for housing discrimination pursuant to R.C. 4112.99. According to that statute, "[w]hoever violates this chapter is subject to a civil action for damages." The plaintiff argued that the statute expressly imposed liability on political subdivisions because it applied to "whoever." *Howard*, 276 F.3d at 807–808. United States Magistrate Judge Michael Merz disagreed and dismissed plaintiff's claims. The Sixth Circuit affirmed:

{¶ 14} "*Section 4112.99 makes no explicit reference to political subdivisions at all* and Howard fails to cite any Ohio case law interpreting this section as imposing liability on a municipality. As Magistrate Merz correctly pointed out, *Howard's 'interpretation would essentially swallow up § 2744.02(B)(5) because it would make municipalities liable for damages, despite the general immunity sections, whenever any statute provides for liability, whether it mentions municipalities or not.'* "

{¶ 1} "In sum, the district court correctly dismissed Howard's claims for damages based on its determination that Beavercreek was entitled to immunity under Ohio Revised Code § 2744.02(A)(1)." (Emphasis added.) Id. at 808.

{¶ 16} We find the Sixth Circuit's reasoning in *Howard* to be persuasive, but we note that although Campbell was decided four months prior to *Howard*, no mention of the *Campbell* opinion was made in *Howard*.

{¶ 17} Recently, the Fourth Appellate District had the occasion to address the meaning of the express liability exception to immunity found at R.C. 2744.02(B)(5). In *Ratcliff v. Darby*, Scioto App. No. 02–CA–2832, 2002-Ohio-6626, 2002 WL 31721942, the Scioto County Court of Appeals held that the trial court properly granted summary judgment to the Scioto County Commissioners and

the Scioto County Sheriff in a suit alleging that Darby, a common pleas bailiff and probation officer, had menaced Ratcliff with a handgun.

{¶ 18} The plaintiff alleged that the defendants were liable under a theory of respondeat superior, negligent supervision, and for violation of Ratcliff's civil rights.

{¶ 19} In a per curiam opinion, the court noted the following:

{¶ 20} "Assuming, however, that appellants had properly raised this issue in the trial court, we nevertheless would not be inclined to reverse the trial court's judgment. Admittedly, appellants make a strong argument for finding an exception to liability in this case. The supreme court's analysis in *Campbell* could be construed, in theory, to support finding political subdivisions liable for an employee's violation of almost any criminal statute. We must agree, however, with appellees that *Campbell* is a 'unique and narrow' decision and we will not apply its holding any more broadly than the specific facts of that case. Importantly, we note that the statute in *Campbell* was not a general criminal provision, but rather dealt with a very specific duty conferred on certain professionals to report to children's services agencies their knowledge or suspicion of child abuse. 92 Ohio St.3d at 340–341 [750 N.E.2d 539], citing R.C. 2151.421. A person[']s failure to make such a report in that instance constitutes a fourth degree misdemeanor. Id. The Ohio Supreme Court noted that the Ohio General Assembly enacted the statute to safeguard children from abuse and that, in many instances, 'only the state and its political subdivisions can protect children from abuse.' Id. citing *Brodie v. Summit Cty. Children Serv. Bd.* (1990), 51 Ohio St.3d 112, 119, 554 N.E.2d 1301, 1308.

{¶ 21} "By contrast, R.C. 2903.21 imposes a general prohibition and criminal sanction on everyone. No single group of individuals (e.g. teachers or school administrators) are specifically identified for that duty. Moreover, while the state has a general interest to assure that its citizens are safe from crime, we find no particularized interest in rooting out the sort of evil at issue in R.C. 2151.421. In short, we find that R.C. 2151.421 and the *Campbell* decision that applies it in the context of R.C. 2744.02(B)(5) distinguishable from the issues in this case."

{¶ 22} We agree with the reasoning employed by the Fourth District in *Ratcliff* that, importantly, the statute imposing express liability in *Campbell* was not a general statutory provision but rather dealt with a very specific duty imposed on certain professionals, namely school personnel. Accordingly, the trial court did not abuse its discretion or err as a matter of law when it found that the immunity exception in R.C. 2744.02(B)(5) did not apply to Five Rivers' conduct. The first assignment of error is overruled.

{¶ 23} In their second assignment, appellants contend that the trial court abused its discretion in failing to declare the Political Subdivision Tort Liability Act ("hereinafter PSTLA") unconstitutional under the Ohio Constitution.

{¶ 24} The appellants claim that PSTLA violates the "Open Courts" provision of the Ohio Constitution, Section 16, Article I. That provision provides:

{¶ 25} "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay.

{¶ 26} "Suits may be brought against the state, in such courts and in such manner, as may be provided by law."

{¶ 27} A regularly enacted statute of Ohio is presumed to be constitutional and is therefore entitled to the benefit of every presumption in favor of its constitutionality. *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 147, 57 O.O. 134, 128 N.E.2d 59. To overcome this presumption, the challenger must establish that a statute is "clearly unconstitutional beyond a reasonable doubt." Id.; *State v. Gill* (1992), 63 Ohio St.3d 53, 55, 584 N.E.2d 1200 ("before a court may declare the statute unconstitutional, it must appear beyond a reasonable doubt that the legislation and constitutional provision are clearly incapable of coexisting"). "This presumption, which can be overcome only in the most extreme cases, works to protect the domain of the legislature from encroachment by the judiciary." *Cent. Ohio Transit Auth. v. Transport Workers Union Local 208* (1988), 37 Ohio St.3d 56, 62, 524 N.E.2d 151.

{¶ 28} The Ohio Supreme Court has held on two occasions that the second clause of Section 16, Article I grants the General Assembly constitutional authority to pass legislation granting immunity to political subdivisions. *Fahnbulleh v. Strahan* (1995), 73 Ohio St.3d 666, 669, 653 N.E.2d 1186; *Fabrey v. McDonald Village Police Dept.* (1994), 70 Ohio St.3d 351, 355, 639 N.E.2d 31. In *Fahnbulleh,* plaintiff sued, inter alia, the city of Columbus for injuries he suffered when a fire truck struck his vehicle, and he claimed that R.C. 2744.02's grant of immunity to political subdivisions was invalid. *Fahnbulleh,* 73 Ohio St.3d at 666, 653 N.E.2d 1186. The Ohio Supreme Court disagreed:

{¶ 29} "It may well be argued that any grant of immunity necessarily impairs some individual's right to seek redress in a court of law, and thus treats some persons harshly. All too frequently, decision making requires difficult balancing of competing interests and equities. *The Ohio Constitution specifies that suits may be brought against the state 'as provided by law.' This language can only mean that the legislature may enact statutes to limit suits if it does so in a rational manner calculated to advance a legitimate state interest."* (Emphasis added.) Id. at 669, 653 N.E.2d 1186.

{¶ 30} In *Fabrey,* the plaintiff, a police officer, was injured while rescuing a prisoner from a fire he had ignited in his prison cell. *Fabrey,* 70 Ohio St.3d at 351, 639 N.E.2d 31. The plaintiff filed suit against the McDonald Village Police Department to recover for his injuries. Id. The trial court granted summary judgment in favor of the police department, and the court of appeals affirmed. On appeal, the Supreme Court again rejected the challenge to political subdivision immunity under the Open Courts Provision:

{¶ 31} "Appellants argue that Section 16, Article I endows them with a fundamental right to sue a political subdivision for damages for the negligence of its employees. *We do not agree.* This court has held that the clause permitting suits to be brought against the state is not self-executing, and that the state of Ohio is not subject to suits in tort without the consent of the General Assembly. Even when this court abrogated the doctrine of sovereign immunity of political subdivisions for acts of negligence, our holding applied only in the absence of a statute providing immunity. In *Haverlack* [*v. Portage Homes, Inc.* (1982), 2 Ohio St.3d 26, 2 OBR 572, 442 N.E.2d 749], we recognized that the doctrine of sovereign immunity was a creature of common law, and thus an appropriate subject also for legislative action. The General Assembly in enacting R.C. Chapter 2744 has used that power to create a scheme for immunity and liability of political subdivisions. Because the General Assembly has the power to define the contours of the state's liability, within the constraints of equal protection and due process, the right to sue the state is not fundamental. The immunity of the defendants in this case is not such an infringement of a preexisting right. It is, rather, in accord with a traditional common-law principle.

{¶ 32} *"We hold, therefore, that R.C. 2744.02(B)(4) does not violate Section 16, Article I of the Constitution of Ohio."* (Emphasis added.) Id. at 354–355, 639 N.E.2d 31.

{¶ 33} Appellants argue that the second clause of the Open Courts Provision of the Ohio Constitution cannot provide the basis of political subdivision immunity because the plain language of R.C. 2744.01 makes it clear that a political subdivision is not the "state." Appellants note that R.C. 2744.01(F) provides:

{¶ 34} " 'State' means the state of Ohio, including, but not limited to, the general assembly, the supreme court, the offices of all elected state officers, and all departments, board, offices, commissions, agencies, colleges and universities, institutions, and other instrumentalities of the state of Ohio. 'State' does not include political subdivisions."

{¶ 35} Appellants also argue that in the plurality opinion in *Butler v. Jordan* (2001), 92 Ohio St.3d 354, 750 N.E.2d 554, Justices Douglas, F.E. Sweeney, and Pfeifer observed that the state consent clause of the Open Courts Provision

applies only to the "state" and not to "political subdivisions." Id. at 372, 750 N.E.2d 554. Appellants also point out that Justice Douglas argued in *Butler* that the Court of Claims Act effectively waived the immunity of political subdivisions as well. Id. at 373, 750 N.E.2d 554.

{¶ 36} Appellants argue that the Ohio Supreme Court has never squarely addressed the meaning of "state" in Section 16, Article I of the Ohio Constitution. Thus, appellants contend that this court is free to declare that the PSTLA is unconstitutional for the reasons espoused by Justices Douglas, F.E. Sweeney, and Pfeifer. Appellee argues that we are duty-bound to follow Ohio Supreme Court precedent on this question.

{¶ 37} Although the consent clause refers only to the "state," the Supreme Court has consistently held that a political subdivision is an "arm" of the state. *Haverlack v. Portage Homes, Inc.* (1982), 2 Ohio St.3d 26, 2 OBR 572, 442 N.E.2d 749. A municipal corporation has been characterized as being both a subdivision of the state and a corporate entity. Id. at 29, 2 OBR 572, 442 N.E.2d 749. In *Wooster v. Arbenz* (1927), 116 Ohio St. 281, 156 N.E. 210, the Supreme Court held that whether a municipality enjoys immunity depends upon the classification of the action taken by the municipality—either governmental or proprietary. Chief Justice Marshall wrote on behalf of the court:

{¶ 38} "This court is for the present committed to the doctrine that there is no liability on the part of a municipality in actions for tort, if the function exercised by the municipality at the time of the injury to the plaintiff was a governmental function. The nonliability for governmental functions is placed upon the ground that the state is sovereign, that the sovereign cannot be sued without its consent, and the municipality is the mere agent of the state and therefore cannot be sued unless the state gives its consent by legislation. Prior to 1912 the state of Ohio was entirely immune from judgments upon any ground, and although the people at that time made provision by amendment to Section 16 of the Bill of Rights, whereby suits might be brought against the state, the provision was not self-executing, and required legislation, which has never been enacted.

{¶ 39} "The court is equally committed to the doctrine that if the function being exercised is proprietary and in pursuit of private and corporate duties, for the particular benefit of the corporation and its inhabitants, as distinguished from those things in which the whole state has an interest, the city is liable.

{¶ 40} "* * *

{¶ 41} "First of all, let us ascertain the tests whereby these distinctions are made. In performing those duties which are imposed upon the state as obligations of sovereignty, such as protection from crime, or fires, or contagion, or

preserving the peace and health of citizens and protecting their property, it is settled that the function is governmental, and if the municipality undertakes the performance of those functions, whether voluntarily or by legislative imposition, the municipality becomes an arm of sovereignty and a governmental agency and is entitled to that immunity from liability which is enjoyed by the state itself. If, on the other hand, there is no obligation on the part of the municipality to perform them, but it does in fact do so for the comfort and convenience of its citizens, for which the city is directly compensated by levying assessments upon property, or where it is indirectly benefited by growth and prosperity of the city and its inhabitants, and the city has an election whether to do or omit to do those acts, the function is private and proprietary." Id. at 283–285, 156 N.E. 210.

{¶ 42} Long ago, the Supreme Court held that the statutes under which the Cleveland Park Board was established were enacted under the broad legislative power conferred upon the General Assembly and in the exercise of the state's general police power. *McNab v. Bd. of Park Commrs. of Metro. Park Dist. in Cleveland* (1923), 108 Ohio St. 497, 141 N.E. 332. Park districts are a political subdivision of the state and perform governmental functions. *State ex rel. Bryant v. Akron Metro. Park Dist.* (1929), 120 Ohio St. 464, 166 N.E. 407. The court in that case noted that park districts are like counties and are thus mere instrumentalities of the state, a means in the hands of the legislative power of the state to accomplish its lawful purposes. Id. at 485, 166 N.E. 407. In *Schaffer v. Bd. of Trustees of the Franklin Cty. Veterans Memorial* (1960), 171 Ohio St. 228, 12 O.O.2d 343, 168 N.E.2d 547, the Supreme Court held that a board of trustees of a veterans memorial appointed by the county commissioners is immune from suit because counties are immune as agencies or instrumentalities of the state clothed with the same sovereign immunity from suit. Id. at 231, 12 O.O.2d 343, 168 N.E.2d 547. As a political subdivision, a park district enjoys the same immunity from suit as the state itself. *Kroger v. Hamilton Cty. Bd. of Park Commrs.* (S.D.Ohio 1980), 17 O.O.3d 158. We are thus not persuaded that political subdivisions are not included within the meaning of the "state" in Section 16, Article I of the Ohio Constitution.

{¶ 43} Appellants argue that R.C. Chapter 2744 violates their right to a jury trial as guaranteed by Section, Article I of the Ohio Constitution. That section provides that the right to a jury trial shall be inviolate. Appellants argue that since negligence actions against political subdivisions were actionable prior to the adoption of the Ohio Constitution in 1851, sovereign immunity may not be utilized as a device for defeating their rights to a jury trial. In support of that argument, appellants refer us to the dissenting opinion of Justice Douglas in *Gladon v. Regional Transit Auth.* (1996), 75 Ohio St.3d 312, 332–344, 662 N.E.2d 287.

{¶ 44} The Fourth District in *Ratcliff,* supra, also addressed a challenge that PSLTA violates the right to a jury trial provisions of the Ohio Constitution. That court noted in its opinion:

{¶ 45} "Section 5, Article I, Ohio Constitution, guarantees that the right of trial by jury 'shall be inviolate.' This provision does not guarantee a jury trial in all cases, *Belding v. State, ex rel. Heifner* (1929), 121 Ohio St. 393, 396 [8 Ohio Law Abs. 28], 169 N.E. 301; *Keller v. Stark Elec. Ry. Co.* (1921), 102 Ohio St. 114, 116, 130 N.E. 508 [18 Ohio L. Rep. 535]. Rather, jury trials are guaranteed in those cases in which the right existed at the time the Constitution was adopted. *Belding* [121 Ohio St.] at 393 [169 N.E. 301], paragraph one of the syllabus; *Sorrell v. Thevenir* (1994), 69 Ohio St.3d 415, 421, 633 N.E.2d 504; *Mason v. State ex rel. McCoy* (1898), 58 Ohio St. 30, 55, 50 N.E. 6. We acknowledge, as appellants argue in their brief, that several justices of the Ohio Supreme Court have opined in dicta that political subdivision immunity under R.C. Chapter 2744 is an unconstitutional infringement on the right to a jury trial. See *Butler v. Jordan* (2001), 92 Ohio St.3d 354, 372, 750 N.E.2d 554 (Douglas J., with Sweeney & Pfeifer, JJ. concurring in opinion) n. 8; *Ryll* [*v. Columbus Fireworks Display Co.*], supra, [95 Ohio St.3d 467, 2002-Ohio-2584, 769 N.E.2d 372] at ¶ 45 (Douglas with Sweeney, J. Concurring in opinion). However, those views do not yet command a majority on the Ohio Supreme Court. Until they do, we will not strike down that legislation as unconstitutional. Accordingly, based upon the foregoing reasons we overrule appellants' third assignment of error.

{¶ 46} "We note that in *Butler* Justice Douglas cites two reasons for his conclusion that the right to a jury trial exists in political subdivision liability cases and should be held inviolate. First, he cites five nineteenth century Ohio Supreme Court cases which 'recognized the right to recover against political subdivisions (municipal corporations) of the state for injuries inflicted on private individuals.' 92 Ohio St.3d at 372 [750 N.E.2d 554]. Those cases include *Goodloe v. Cincinnati* (1831), 4 Ohio 500 [1831 WL 35], *Smith v. Cincinnati* (1831), 4 Ohio 514 [1831 WL 36]; *Rhodes v. Cleveland* (1840), 10 Ohio 159 [1840 WL 31]; *McCombs v. Town Council of Akron* (1846), 15 Ohio 474 [1846 WL 120]; and *Town Council of Akron v. McComb* (1849), 18 Ohio 229 [1849 WL 105]. However, even the earliest of these five cases (*Goodloe*) was decided in 1831, which is twenty-nine years after our first state constitution was adopted, and provides no discussion as to the state of the law either at time of statehood or during the period when the Ohio territory was governed by the Northwest Ordinance. (The right to jury trial in Section 5, Article I, was set out in Section 8, Article VIII of the 1802 Constitution). Thus, we question whether these cases make a compelling argument for that position. The second reason cited for holding the right to a jury trial inviolate in municipal liability cases is that the action is based on

negligence and 'negligence actions *evolved* from the common-law action of trespass on the case, and there is no question that the right to trial by jury existed in such actions at the time the Ohio Constitution was adopted.' (Emphasis added.) 92 Ohio St.3d at 372 [750 N.E.2d 554]. 'Evolved' is the key qualifier here. While this sort of action may have evolved from an old common-law action, as did many of the legal proceedings with which we are familiar today, a question arises as to whether that necessarily means that the action existed at the time the 1802 Constitution was adopted. See *Mason v. McCoy* (1898), 58 Ohio St. 30, 55, 50 N.E. 6." Id. at fn. 9.

{¶ 47} Five Rivers concedes that if sovereign immunity did not protect it, appellants would be entitled to a jury trial under the constitutional provision asserted. Five Rivers argues that a legislature's abolition of a claim does not, however, implicate a right to a jury trial. *Mountain Timber Co. v. Washington* (1917), 243 U.S. 219, 235, 37 S.Ct. 260, 61 L.Ed. 685 ("[W]e find nothing in the act that excludes a trial by jury * * * the act abolishes all right of recovery in ordinary cases, and therefore leaves nothing to be tried by the jury."). In *Mountain Timber*, the United States Supreme Court, in interpreting the proscription of the Seventh Amendment of the federal Constitution (preserving the right to trial by jury in language similar to Ohio's Constitution), considered challenges made under the Seventh Amendment to the enactment of a workers' compensation law abrogating an employee's right at common law to recover in negligence from his employer. See, also, *Winkle v. Toledo* (July 25, 1998), Lucas App. No. L–97–1335, 1998 WL 422275. In overruling a similar assignment, Judge Knepper in *Winkle* noted that "[a]s to appellant's claim that R.C. 2744.02 and 2744.03 violate his right to a trial by jury, appellant has failed to support his claim that the Ohio Constitution guarantees a trial by jury even in a case where it has been held that he has no cause of action."

{¶ 48} Appellants argue that PSTLA violates the Equal Protection and Due Process Clauses of the Ohio and United States Constitutions. The Supreme Court has held that R.C. 2744.02(B)(4) does not violate the guarantees of equal protection of the Ohio and United States Constitutions. *Fabrey v. McDonald Police Department,* supra, at paragraph one of the syllabus. The court also upheld the Act against a challenge that it violated the due process provisions of these Constitutions. *Fabrey,* supra, at paragraph two of the syllabus. The United States Supreme Court has further elaborated that the Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object. *Silver v. Silver* (1929), 280 U.S. 117, 122, 50 S.Ct. 57, 74 L.Ed. 221. Rights of property created by the common law that have vested cannot be taken away without due process. But the law itself being but a rule of conduct may be changed at the will of the

legislature. The only limitation to prevent such a change would be a constitutional limitation. *Munn v. Illinois* (1876), 94 U.S. 113, 134, 24 L.Ed. 77. The appellants' right to sue in negligence did not vest before the enactment of PSTLA. They have no constitutional right to require that a particular form of action remain in force to anticipate their future injury.

{¶ 49} In conclusion, we find that the trial court did not abuse its discretion in refusing to find PSTLA unconstitutional for the reasons asserted by the appellants. This assignment of error is likewise overruled.

{¶ 50} The judgment of the trial court is affirmed.

Judgment affirmed.

FAIN, P.J., and WOLFF, J., concur.